Mrs. Ethel Mae **COXSEY** et al., Plaintiffs,

v.

Najeeb **HALLABY** et al., Defendants.

Civ. No. 64-224.

United States District Court
W. D. Oklahoma.

Aug. 6, 1964.

Miskovsky, Sullivan, Embry & Miskovsky, Oklahoma City, Okl., for plaintiffs.

Hubert M. Crean, Dept. of Justice, Alan Raywid, Washington, D. C., B. Andrew Potter, U. S. Atty., David A. Kline, Asst. U. S. Atty., Oklahoma City, Okl., for defendants.

CHANDLER, Chief Judge.

Pursuant to 49 U.S.C. § 1353(b) the Federal Aviation Agency (FAA) instituted a test program at Oklahoma City, Oklahoma, whereby aircraft made and are making faster-than-sound flights over the city. These flights cause shock waves or "sonic booms" which produce a loud noise and some vibration when they reach the ground. This sonic boom test program was designed to determine public acceptability and the effect on ground structures of booms anticipated as a result of projected commercial supersonic transport (SST) flights traveling at faster-than-sound speeds. The test program was begun on February 3, 1964, and is to terminate August 2, 1964. The tests are being carried out with United States Air Force aircraft, equipment and personnel.

Plaintiffs, residents and/or property owners in Oklahoma City, brought this action against certain officials of the FAA, the Air Force and other government agencies associated with the sonic boom tests in the state District Court of Oklahoma County, asking that the defendants be enjoined from continuing the tests as such tests constituted a nuisance under the laws of Oklahoma and were in violation of plaintiffs' constitutional rights. Plaintiffs alleged that the sonic booms were damaging buildings and the health and well-being of plaintiffs and others similarly situated. The defendants removed the case to this court under the provisions of 28 U.S.C. § 1442 (a) (1).

The intensity of sonic booms is measured by pounds per square foot. Prior to the commencement of the test program at Oklahoma City, tests by the government demonstrated that sonic booms of 120 pounds per square foot did not have any adverse effect upon the health of persons on the ground and that no pain was experienced by human beings at less than 40 pounds per square foot. In the beginning, the flights over Oklahoma City were set up so as to generate sonic boom overpressures of 1.5 pounds per square foot. Since June 11, 1964, the flights have been conducted so as to generate overpressures of 2.0 pounds per square foot. These flights are being conducted during daylight hours, at regularly scheduled times, eight times per day. The period of February 2–August 2 was selected for the tests in order to provide a wide range of meteorological and climatic conditions as these factors affect sonic booms.

A claims program was set up in Oklahoma City by the FAA to process and pay claims for any damage occurring by reason of the sonic booms, and a claim adjustment firm was engaged to investigate the claims. The FAA also placed instruments in buildings in widely separated sites in Oklahoma City to test the effects of the booms on structures. These instruments indicate that the sonic boom tests as conducted have had no noticeable effect on such structures.

■ The FAA is authorized under the provisions of 49 U.S.C. § 1353(b) to conduct tests which tend to the creation of improved aircraft. The SST clearly falls within the category of such "improved aircraft."

■ The due process guaranty of the Fifth Amendment demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be obtained. Porter v. Shibe, 10 Cir., 158 F.2d 68.

The sonic boom test program carried on by the FAA at Oklahoma City is a necessary prerequisite to the design and construction of the SST and to a determination of whether or not the SST is economically feasible. In addition, the tests are providing the armed forces with information which is useful to the defense efforts of the United States.

The test program has been and is being conducted on a reasonable basis by the FAA, and the evidence does not disclose that any significant harm has been occasioned to the residents of Oklahoma City as a result of the program. Though plaintiffs established that some property damage was caused by the tests in a

few individual instances, the damage was not shown to be irreparable, and plaintiffs have an adequate remedy at law available to them.

No inhumane acts were contemplated or involved. The evidence clearly disclosed that the sonic booms have not caused any physical or mental harm to plaintiffs or others. No expert medical testimony was offered by plaintiffs although the court suggested that they produce medical witnesses. Defendants' expert medical testimony established that the tests neither caused, nor could cause, any injury to the physical or mental health of Oklahoma City residents. Furthermore, this testimony established that the tests neither did, nor could, aggravate or precipitate any pre-existing or latent physical, mental, psychological or neurological condition of these residents.

The emotions of all witnesses who testified on behalf of the plaintiffs were noticeably involved. Their extreme irritation indicated strongly that they were the type individuals who are easily irritated by the acts of others which do not conform to their wishes. It was apparent, too, from their demeanor and the testimony that they and others objecting to the continuation of the boom project were actuated, and their irritation increased by their belief that the government did not intend to make just compensation for any possible damage caused by the vibration created by the sonic booms. Emotionally stable and disinterested citizens were not upset nor unduly annoyed by the booms. Most did not notice them at all, as clearly shown by motion pictures placed in evidence. I think it proper to state that throughout the various hearings the conclusion was inescapable that the protests to the "booms" were being aggressively voiced by a very few persons, and that their protests were not representative of the attitude of the rank and file citizen.

■ In view of all the evidence and the circumstances surrounding the test program, it must be said that the tests are reasonable and that the plaintiffs

have not been and are not being deprived of due process of law.

■ Since the test program is authorized by 49 U.S.C. § 1353(b) and does not offend due process, this suit is one brought against the government without its consent and, therefore, the court is without jurisdiction.

■ Even if the court were deemed to have jurisdiction in this case, it would nevertheless be necessary to enter judgment for defendants since plaintiffs have failed to establish personal physical damage or other irreparable injury, have an adequate remedy at law and have established no right to equitable relief.

Specific Findings of Fact, Conclusions of Law and Judgment in accordance with the views herein expressed have been filed in the office of the Clerk.